NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0275n.06
Filed: May 19, 2008

Case No. 05-6189

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| MICHAEL WAYNE MURPHY, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| ————————————————— | ) | |
| | ) | |

BEFORE:  BATCHELDER, SUTTON, and FRIEDMAN,[*] Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Michael Wayne Murphy ("Murphy") appeals his conviction on a charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and his sentence as an armed career criminal in accordance with 18 U.S.C. § 924(e)(1). Murphy raises three issues in this appeal:  (1) the district court erred in denying his motion to suppress evidence obtained during a traffic stop; (2) the district court erred in failing to grant him a Guidelines reduction for acceptance of responsibility; and (3) the district court erred in sentencing him as an armed career criminal.  Finding no merit in any of Murphy's contentions, we **AFFIRM**.

**I.  BACKGROUND**

---

[*]The Honorable Daniel M. Friedman, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

On the afternoon of December 31, 2003, Deputy Brian Bedsworth ("Deputy Bedsworth") of the Lawrenceville, Tennessee, County Sheriff's Department saw Murphy run a stop sign and cause another vehicle to swerve off the road. Deputy Bedsworth activated the lights on his cruiser and pulled Murphy over. Murphy got out of his vehicle and approached Deputy Bedsworth, who ordered Murphy to return to his truck; Murphy complied and the deputy followed.

As Murphy got back into his truck, Deputy Bedsworth saw him push a rifle barrel from the driver's side over to the passenger's side. Deputy Bedsworth immediately ordered Murphy to place his hands on the steering wheel; as the deputy approached the truck on the driver's side, he detected an odor of alcohol. When Murphy was unable to produce his driver's license or proof of insurance, Deputy Bedsworth ordered him to exit the truck.

At that point, Deputy Bedsworth could see inside the truck, where he observed an open beer can on the console and a bag with more beer in it. Upon being questioned, Murphy told Deputy Bedsworth that he had consumed one beer, he had been deer hunting that morning, the rifle in the truck was loaded,[1] and his driver's license had been suspended. Assuring Murphy that he was not under arrest, Deputy Bedsworth obtained Murphy's consent to conduct a pat-down search, during the course of which he found Murphy's Tennessee identification card. The deputy then put Murphy in the back of the patrol car and ran a license check on his identification card; finding that Murphy's license had been revoked, the deputy placed him under arrest.[2]

---

[1]Murphy was not sure if there was a round in the chamber.

[2]Murphy was issued state citations for failing to stop at a stop sign, consuming or possessing an open container of an alcoholic beverage while driving, and failing to show proof of insurance.

A federal grand jury indicted Murphy for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924, and the Government filed a notice indicating its intent to seek an enhanced sentence pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). Murphy moved to suppress all evidence obtained during the traffic stop and his subsequent arrest, contending that Deputy Bedsworth had not had probable cause to conduct the initial traffic stop and thus had violated Murphy's Fourth Amendment Rights. The district court denied the motion to suppress, concluding that Deputy Bedsworth had watched Murphy run a stop sign, which gave him probable cause to make the initial stop, and that the subsequent events — the deputy's seeing a rifle in plain view and smelling the odor of alcoholic spirits, Murphy's admission that he had been drinking alcohol, and Murphy's failure to produce a valid driver's license or proof of insurance — had all occurred during the course of a valid traffic stop and provided probable cause to arrest Murphy.

The jury found Murphy guilty on the count charged in the indictment, and the Presentence Investigation Report ("PSR") recommended that the district court sentence him to a minimum of 15 years' imprisonment in accordance with the ACCA because he had previously been convicted of at least three separate violent felonies.[3] Murphy objected to the PSR, claiming, among other things,

___

[3]Murphy's four prior violent felony convictions, set forth in the PSR and utilized by the district court at sentencing, are as follows:

(1) Arson, August 16, 1988, Case No. 3099, Circuit Court of Giles County, Tennessee, sentence of 10 years;

(2) Third Degree Burglary, August 16, 1988, Case No. 3101, Circuit Court of Giles County, Tennessee, sentence of five years;

(3) Third Degree Burglary, August 16, 1988, Case No. 3102, Circuit Court of Giles County, Tennessee, sentence of five years; and

(4) Felony Escape, September 17, 1992, Case No. 92-C-1435, Criminal/Circuit Court of Davidson

3

that he had not been convicted of three "separate" violent offenses and the ACCA therefore did not apply. Furthermore, at his sentencing hearing Murphy contended that he should have been granted a Guidelines reduction for acceptance of responsibility because he had twice attempted to plead guilty.[4] The district court overruled all of Murphy's objections and sentenced him to 210 months' incarceration. This timely appeal followed.

## II. ANALYSIS

Murphy raises three issues on appeal. First, he claims the district court erred in denying his motion to suppress. Second, he argues that the district court erred when it denied him a Guidelines reduction for acceptance of responsibility. Third, he contends that the district court erred in sentencing him under the ACCA.

### A. Motion to Suppress

The denial or grant of a motion to suppress presents a mixed question of law and fact. *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (citing *United States v. Hurst*, 228 F.3d 751, 756 n.1 (6th Cir. 2000)). "Thus, we review the district court's findings of fact for clear error and the district court's conclusions of law de novo." *Id*. (citing *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006)). We must view the evidence "in the light most likely to support the district court's decision." *Dillard*, 438 F.3d at 680 (internal quotation marks and citations omitted). We will find a district court's factual findings clearly erroneous only if, after reviewing all the evidence, we are

---

County, Tennessee, sentence of one year.

[4]The Government rejected those proposed pleas because they did not take into account the enhancement required by 18 U.S.C. § 924(e)(1).

"left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

We evaluate whether a traffic stop violates the Fourth Amendment "in the same manner as other alleged violations of that Amendment: by undertaking 'an objective assessment of an officer's actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only 'unreasonable' searches and seizures.'" *United States v. Ferguson*, 8 F.3d 385, 388 (6th Cir. 1993) (en banc) (quoting *Scott v. United States*, 436 U.S. 128, 137 (1978)). In other words, an automobile stop must "not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Murphy does not contest any of the facts of the stop. Rather, he claims that Deputy Bedsworth's incident report and his testimony at the suppression hearing were incomplete and contradictory, and failed to demonstrate that the deputy had probable cause for making the traffic stop. The district court found Deputy Bedsworth "highly credible," and determined that, while Deputy Bedsworth's incident report was not without error, his testimony was not unreliable.

Deputy Bedsworth clearly had probable cause for the initial stop. The deputy watched as Murphy failed to stop at a stop sign and forced another vehicle off the road — an obvious traffic violation. *See Ferguson*, 8 F.3d at 391. Hence, the initial stop was valid. And, although Murphy does no more than hint at this issue on appeal, Deputy Bedsworth also had probable cause to arrest him, having discovered after the lawful stop of the vehicle that Murphy smelled of alcohol, had an open container of alcohol in plain view on the truck's console and more beer in a sack inside the truck, and had neither a valid driver's license nor insurance. Of most concern to Murphy, of course, is the loaded rifle that Deputy Bedsworth saw leaning against the driver's side seat of the truck. But

5

the rifle, like everything else that the deputy found in the truck, was found pursuant to a valid traffic stop. We find no error in the district court's denial of Murphy's motion to suppress.

## B. Acceptance of Responsibility

We review for clear error a district court's determination of whether to award a defendant a reduction for acceptance of responsibility. *United States v. Kathman*, 490 F.3d 520, 524 (6th Cir. 2007); *see also* U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 3E1.1 cmt. n. 5 (2005) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). Murphy argues that the district court should have granted him a two-point Guidelines reduction for acceptance of responsibility because he twice tried to plead guilty but the Government did not accept his offers.

This Guidelines reduction applies to defendants who clearly demonstrate that they accept the responsibility for their crimes. U.S.S.G. § 3E1.1(a). Although conviction at trial does not automatically preclude a defendant's being considered for this reduction, *id*. at cmt. n. 2, it is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse," *United States v. Angel*, 355 F.3d 462, 477 (6th Cir. 2004) (quoting U.S.S.G. § 3E1.1 cmt. n. 2). Only in rare circumstances will a defendant who goes to trial warrant an acceptance-of-responsibility reduction, one such example being a defendant who made pre-trial statements indicating an acceptance of responsibility but who went to trial to preserve issues not related to factual guilt. *See id*. (quoting U.S.S.G. § 3E1.1 cmt. n. 2).

6

Unlike the "rare case" contemplated by *Angel* and the Guidelines, Murphy's case presents us no reason to believe that he accepts responsibility for his crime. The Government rejected his offers to plead guilty because his proposed guilty plea did not provide for the enhanced punishment under the ACCA. At trial, Murphy denied his guilt, testifying that he did not know the rifle was in the pickup truck and that it was not his rifle. Murphy's actions throughout the course of his trial and sentencing demonstrate that at no time has he accepted responsibility for his crime. The district court did not err in denying Murphy this reduction.

### C. Armed Career Criminal Act

Murphy's final argument is that the district court erred in enhancing his sentence in accordance with the ACCA. The ACCA provides in relevant part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1). The Government sought to enhance Murphy's sentence because he was previously convicted of four separate violent felonies: (1) Arson; (2) Third Degree Burglary; (3) Third Degree Burglary; and (4) Felony Escape.

Murphy argues first that his prior convictions for the burglaries of unoccupied businesses do not qualify as violent felonies for purposes of the ACCA. Murphy did not actually develop this argument in his brief on appeal, opting instead to include a brief and general discussion of *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), but making no effort to apply those cases to the facts of his own case. In particular, Murphy has not even attempted to explain the elements of the state-law burglary offenses of which he was convicted,

7

information critical to any determination of whether these offenses meet the ACCA's definition of violent felonies. Where the appellant offers no real analysis of his claim or raises an issue in a perfunctory manner but fails to include any developed argumentation, we will deem the issue waived. *See McPerson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). We therefore decline to address this assignment of error.

Murphy also argues that his two burglary convictions and his arson conviction were really part of the same course of conduct and not "committed on occasions different from one another." He does not challenge any of the facts of his prior convictions, stating only that because they were part of one course of conduct, they were not three distinct crimes. We review de novo the district court's determination that the crimes were separate offenses. *See United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006).

The undisputed facts are these: On the night of January 19 and/or the early morning of January 20, 1988, Murphy embarked on a crime spree. First, Murphy committed arson against an apartment building located in Pulaski, Tennessee — Case No. 3099. Next, he broke into and carried personal goods away from the business house of Hays Distributing Company — Case No. 3101. Then, after leaving Hays Distributing Company, Murphy broke into and carried equipment away from the business house of Tennessee Valley Motors — Case No. 3102.

This circuit long ago held that "offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1)." *United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993) (en banc). More recently we held "that there are at least three indicia that offenses are

separate from each other" under the ACCA. *Hill*, 440 F.3d at 297. First, two offenses are separate "if it is possible to discern the point at which the first offense is completed" and the second offense begins. *Id*. Second, two separate offenses are committed if the defendant had the opportunity to cease his criminal conduct after the first offense and withdraw from committing the second offense. *Id*. "Finally, separate offenses are committed if the offenses are committed in different residences or business locations." *Id.* at 298. Murphy's actions satisfy all three indicia of separate offenses. His crimes were three distinct acts with defined beginnings and ends; he had a chance to cease his conduct after each criminal act and before carrying out the next criminal act; and he committed the crimes at three different locations and against three different residences or businesses. We conclude that Murphy's three convictions stemming from his actions on January 19-20, 1988, constitute offenses "committed on occasions different from one another" for the purposes of the ACCA. Consequently, we hold that the district court did not err in sentencing Murphy as an armed career criminal under the ACCA.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.