**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0108n.06

No. 10-2638

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 31, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| ARTHUR ANDERSON, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before: MOORE, CLAY, and McKEAGUE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Arthur Anderson challenges his narcotics conviction and the district court's denial of his motion to suppress heroin seized from his vehicle during a search that took place shortly after a routine traffic stop. The stop occurred approximately four hours after officers discovered that Anderson was violating state license-plate regulations. That delay permitted the officers to continue a surveillance operation to investigate Anderson's involvement with a known drug ring. Anderson argues that the four-hour delay rendered the stop unreasonable. Because of the ongoing nature of Anderson's infraction, we disagree. We therefore **AFFIRM** the district court's judgment.

**I. BACKGROUND & PROCEDURE**

In 2009, the Kalamazoo Valley Enforcement Team ("KVET"), a Michigan drug-enforcement organization, was investigating a drug ring believed to be linked to heroin sales in Kalamazoo.

Based on information received from an informant and federal defendant, police suspected that a man named Winston Owen was involved in a large-scale heroin-trafficking operation and that Anderson was a "mule" transporting drugs on his behalf. A few others, including Anderson's nephew, Donald Hollin, were also identified as having some involvement in the operation.

At around 8:00 a.m. on June 4, 2009, KVET initiated a surveillance operation to gather additional information about Anderson's activities. The officers began their surveillance at Theo & Stacy's Restaurant, a Kalamazoo business that Anderson was known to frequent regularly. Shortly after their arrival at the restaurant, the officers noticed a vehicle bearing the same license plate as the Lincoln Town Car that Anderson was known to drive. The car to which the license plate was attached, however, was a newer model of a slightly lighter color. Thus, by no later than 8:30 a.m., officers had probable cause to believe that Anderson had the incorrect license plate on his car in violation of Michigan law. Rather than confront Anderson at that time, however, the officers decided to continue their surveillance, reserving the license-plate violation as the basis for a later stop.

Anderson left the restaurant at approximately 8:35 a.m., briefly returned home, and then made short stops at a grocery store parking lot and a gas station. Anderson then drove about forty-five miles to T & D Motoring Company, a business that Hollin co-owned in Grand Rapids, Michigan. There, Hollin pulled up in a second vehicle and climbed into Anderson's passenger seat. The two traveled to a nearby location, where the officers watched as Hollin briefly disappeared into

2

an apartment and then reentered the car. The two returned immediately to T & D Motoring Company, where Anderson left Hollin and headed back toward Kalamazoo.

As he was en route, two officers stopped Anderson for the license-plate violation. Approximately four hours had passed since the officers first noticed the infraction. As one of the officers checked Anderson's license and registration, his partner requested consent to search Anderson's person and vehicle. Anderson granted the request, but limited the vehicular search to the trunk. Although the trunk search revealed nothing, the officer found two bundles of currency in Anderson's pockets. A few minutes later, a narcotics dog arrived at the scene. The dog alerted to narcotics, and the ensuing vehicle search unveiled a package of heroin in an armrest inside the car.

A grand jury charged Anderson with conspiracy to distribute and to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 846 and 841(a), and with possession with intent to distribute heroin in violation of § 841(a). On July 12, 2010, Anderson moved to suppress the heroin, challenging (1) the four-hour delay between the officers' discovery of probable cause to stop him for the license-plate violation and the time at which the traffic stop was initiated, and (2) the duration of the ensuing traffic stop. The district court denied the motion, determining that the initial stop was reasonable in spite of the four-hour delay, and that, even if the stop was slightly prolonged to await the arrival of the narcotics dog, the facts known at that time were sufficient to support a reasonable suspicion that Anderson was involved in criminal activity, thereby justifying the minor delay. *United States v. Anderson*, No. 1:09-CR-195-03, 2010 WL 2854272, at *3, *5–*6 (W.D. Mich. July 19, 2010). Anderson pleaded not guilty, and the case proceeded to trial. The jury

returned guilty verdicts on both counts of the second superseding indictment on which Anderson was charged. The district court sentenced Anderson to sixty-three months in prison and three years of supervised release. Anderson timely appealed.

## II. LAW & ANALYSIS

### A. Standard of Review

"Whether a seizure was reasonable under the Fourth Amendment is a question of law that we review de novo." *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010). Because the district court denied Anderson's motion to suppress, "we must consider the evidence in the light most favorable to the government." *Id.*

### B. The Reasonableness of the Traffic Stop

"[A] vehicle stop by a police officer is a seizure within the meaning of the Fourth Amendment." *Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) (internal quotation marks omitted). Thus, to ensure that a traffic stop is constitutional, "an officer must have probable cause to make a stop for a civil infraction, [or] reasonable suspicion of an ongoing crime." *Id.* (alteration in original) (internal quotation marks omitted). Generally speaking, however, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

The parties do not dispute that, as of 8:30 a.m., officers had probable cause to stop Anderson for the licence-plate violation. Instead, the only issue is whether the four-hour delay in initiating the

traffic stop renders it unreasonable and in violation of Anderson's Fourth Amendment rights.[1]  In

support of his argument, Anderson points to a handful of cases from other circuits that place limits

on an officer's ability to initiate a traffic stop when some amount of time has passed since the officer

observed the underlying violation.  *See* Appellant Br. at 13–15 (citing *United States v. Hughes*, 517

F.3d 1013 (8th Cir. 2008); *United States v. Grigg*, 498 F.3d 1070 (9th Cir. 2007); *United States v.*

*Moran*, 503 F.3d 1135 (10th Cir. 2007), *cert. denied*, 553 U.S. 1035 (2008); *United States v.*

*Mendonca*, 682 F. Supp. 2d 98 (D. Mass. 2010)).  Each of those cases, however, involved a delayed

stop that followed a prior *completed* misdemeanor.  *See Hughes*, 517 F.3d at 1017 (determining that

the circumstances did not permit a stop based only on reasonable suspicion of an already-completed

trespassing offense); *Grigg*, 498 F.3d at 1072, 1083 (addressing a stop for a past

misdemeanor—violating a local noise ordinance—and concluding the stop was unreasonable when

it did not involve any appreciable risk to public safety and was based only on a citizen's complaint

about the defendant's prior excessive stereo volume); *Moran*, 503 F.3d at 1143 (discussing the

reasonableness of "investigatory stops based on completed misdemeanors" in the context of criminal

trespass, and determining that, under the particular circumstances of the case, the stop was

reasonable); *Mendonca*, 682 F. Supp. 2d at 101, 104 (evaluating a stop based on speeding and

unlawful lane changes that took place about an hour after those offenses were completed, and

---

[1]Although Anderson's suppression motion focused largely on the stop's duration, his argument before this court relates solely to the reasonableness of the initial seizure and no longer challenges the length of the stop.  Because Anderson has not raised the issue on appeal, we express no opinion on the events that followed the officers' initiation of the traffic stop.

concluding that "a completed traffic misdemeanor cannot hang over a suspect indefinitely until a time at which he has engaged in some other suspicious activity that officers believe warrants a pretextual stop"). Because these cases fail to address the constitutionality of a traffic stop conducted to investigate an *ongoing* violation, however, they are inapposite.

More to the point, cases in this circuit support the view that stops for ongoing violations are not unreasonable solely because of a relatively short delay between the point at which law enforcement takes note of the violation and the point at which officers initiate the stop. Indeed, in *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004), we upheld a traffic stop for driving without a valid license even though three weeks had passed since the officer ran the license check that identified the missing license. In spite of that delay, the prior license check was sufficient to support a reasonable suspicion of an ongoing violation, and the intervening three-week period was not sufficient to render the stop unreasonable. *Id.* Pivotal to this court's analysis was the fact that "[d]riving without a valid license is a continuing offense—in contrast, say, to a speeding or parking violation." *Id.* Because in the context of ongoing criminal activity, "it will take longer for the information to become stale," we concluded that the officer was justified in briefly stopping the defendant to determine whether the crime was still in progress. *Id.*

In Anderson's case, the officers had no question that, at the time of the stop, Anderson was still engaged in an ongoing traffic violation. *Cf. United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (classifying a similar offense—"failure to keep a license plate 'clearly legible'"—as an ongoing legal violation). There is simply no reason why the officers' decision to conduct a discreet

surveillance operation prior to engaging in a perfectly legitimate traffic stop should alone render that stop unreasonable. *Cf. United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) ("We have long held that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." (internal quotation marks omitted)).

That the officers' true motivation for stopping Anderson was to uncover evidence of drug trafficking is also of no consequence. *See United States v. Hughes*, 606 F.3d 311, 315 n.7 (6th Cir. 2010) ("[I]t is possible for there to be probable cause for a stop even where the facts that give rise to that probable cause (such as a violation of traffic laws) play no role in an officer's decision to make the stop."); *Bazzi*, 658 F.3d at 604 ("A traffic violation provides probable cause to justify a stop even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop. Accordingly, [w]hen a traffic stop is supported by probable cause, an officer's subjective intent behind stopping the vehicle is irrelevant." (alteration in original) (citation and internal quotation marks omitted)); *see also Whren*, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Although *Whren* suggests that "rare exceptions" may tilt the Fourth Amendment reasonableness inquiry in favor of the defendant even when a search or seizure is supported by probable cause, 517 U.S. at 817, the facts of this case do not lead us to conclude that such an exception applies here.[2]

_____

[2]Because we determine that the four-hour delay before stopping Anderson for an ongoing traffic violation was not unreasonable, we decline to address the government's alternative argument that the stop was independently justifiable based on the officers' reasonable suspicion that Anderson

## III.  CONCLUSION

Although law enforcement does not have unbounded discretion to delay a stop in order to facilitate the investigative process, where, as here, the facts involve an ongoing traffic violation and a relatively short delay, we cannot say that the stop was unreasonable.  We therefore **AFFIRM** the judgment of the district court.

---

was actually engaged in drug-related activity at the time of the stop.