**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0418n.06

Case No. 19-6462

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 20, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JAMES MACKLIN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| | ) | |

BEFORE: MOORE, CLAY, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** James Macklin rolled through a stop sign while driving his girlfriend's car. When Memphis police officers pulled him over, he had no license on him and was asked to step out of the car. Macklin, a felon who had a gun on him, instead got out and ran. Officers apprehended him after a chase, and Macklin was later charged with being felon in possession of a firearm.

Macklin moved to suppress the gun, arguing that the government could not establish probable cause for the traffic stop because there was no in-car video recording it. The district court denied Macklin's motion, holding that there was probable cause for the traffic stop and the lack of in-car video was due to a reasonable mistake. Macklin pled guilty and now appeals the denial of his suppression motion. We **AFFIRM**.

## I. Background

On September 29, 2017, Officer Madison Capps and her field training officer Tayt Matheny of the Memphis Police Department, were on patrol in Memphis, Tennessee. Capps had recently graduated from the police academy and had been a patrol officer for just over a month.

Capps drove and Matheny rode in the front passenger seat. As the two officers approached the intersection of Montgomery and Keel at about 1:00 a.m., Capps saw a black Dodge Charger (the car Macklin was driving) fail to make a complete stop while making a right turn onto Montgomery. Capps testified that she could see the traffic violation despite it being dark out, because the area was "fairly lighted." Matheny did not see it happen because he was not looking in the right direction. Capps asked to initiate a stop anyway. Matheny gave her the "go-ahead"; Capps turned on the squad car's lights.

There are three options to choose from when activating the squad car's lights. One "click" turns the rear lights on; two clicks turns the rear and front lights on and activates the body and in-car cameras; and three clicks activates the rear and front lights, both sets of cameras, and the sirens. In this situation, Capps turned the lights "two clicks," and Macklin promptly stopped his car.

This should have activated both officers' body cameras and the in-car camera. Capps testified that when she activated the squad car's blue lights, the in-car camera activated on the dashboard video screen and beeped in "a different way than the body[] camera, so it was activated." Further, Matheny explained that the in-car video "popped up" that day, which meant that it was working. For some reason, though, there was no in-car video recording of this traffic stop.[1]

---

[1] The in-car camera is apparently always recording footage but preserving it only if the squad car's lights are activated; once the lights are activated, the recording will jump back to thirty seconds before the lights' activation and be preserved from then on. So even though Capps activated the car's lights after she saw Macklin roll through a stop sign, the lost recording would have likely captured what happened.

Officer Cash, a video analyst for the Memphis Police Department, explained what happened. He testified that the in-car video from the squad car was "cancelled," not manually deleted, because the blue lights were turned on and then turned off within seconds. As Cash explained, "if you activate the blue lights there is an automatic trigger for the camera to begin recording . . . . However, if you were to deactivate that recording manually within ten seconds, . . . or if you were to turn the lights back off within a matter of seconds, then it would cancel the recording." Cash concluded that turning the lights off within seconds is what cancelled the in-car video in this case—he confirmed with the "vendor" that this is what happened—which was nonetheless a violation of Memphis Police Department policy.

What videos existed were entered into evidence at the suppression hearing. Matheny's body-camera footage showed that other patrol cars which later arrived on the scene had front and rear lights activated, in contrast to only the rear lights activated on Capps's and Matheny's car. Additionally, Matheny can be seen on his video trying to review the in-car video of the traffic stop and mentioning the lack of footage to other officers.

Capps's body-camera footage at first depicts the squad car's dashboard video screen, which in turn shows live footage of Macklin's car as he comes to a stop. This video of Macklin's car remains on the dashboard screen as Capps exits the squad car. In Capps's body-camera video, she can be heard asking Macklin, "did you not see that stop sign back there?" and Macklin responding, "I stopped," and then Capps countering that he "rolled it" and "didn't stop completely."

Capps then asked for Macklin's license. Macklin responded that he did not have a license on him because the Dodge Charger he was driving was his girlfriend's. When Macklin started looking for his girlfriend's insurance information, Capps asked Macklin to step out of the car.

When she tried to pat him down, Macklin ran off. Eventually, Capps apprehended Macklin and found a gun on him.

Because Macklin was a felon at the time he was caught with a gun, the government charged Macklin with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Macklin moved to suppress the gun, arguing that officers found the gun only because of an illegal traffic stop. Specifically, Macklin argued "there could be no objectively reasonable suspicion that a crime was in process, let alone probable cause of a civil violation" when Capps pulled Macklin over. An evidentiary hearing on the suppression motion was held before a magistrate judge on October 24, 2018, in which the above facts were developed. The magistrate judge recommended denying the motion because the government had met its burden of establishing probable cause for the traffic stop. Importantly, the magistrate judge found Capps's and Matheny's testimony to be credible. And the magistrate judge reasoned that the officers' mistake in cancelling the in-car video was a reasonable one which did not eliminate probable cause.

The district court adopted the magistrate judge's recommendation and denied Macklin's suppression motion. Macklin then pled guilty, reserving his right to appeal the denial of his suppression motion, and now so appeals.

## II. Standard of Review

In reviewing a district court's ruling on a motion to suppress, "we review findings of fact for clear error and legal conclusions de novo." *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012). "When the district court has denied the motion to suppress," as is the case here, "we review all evidence in a light most favorable to the Government." *Id.* at 452–53 (quoting *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006)). And we may affirm "on any ground supported

by the record," *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012), not just the grounds the district court relied on.

### III.  Discussion

Macklin argues that the district court erred in denying his motion to suppress because there was no probable cause supporting his traffic stop and because his due-process rights were violated through the bad-faith destruction of potentially exculpatory evidence—the missing in-car video footage of the traffic stop.

The Fourth Amendment to the United States Constitution protects a person's right against "unreasonable searches and seizures." U.S. Const. amend. IV. "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Consequently, if evidence is seized through an illegal traffic stop, it must ordinarily be suppressed as "fruits of the poisonous tree." *Id.* (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)).  We assess the legality of a traffic stop using two different tests: "an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *Id.*

Rolling through a stop sign without completely stopping is a misdemeanor in Tennessee, Tenn. Code Ann. § 55-8-149(c) and (d), but we will assume without deciding that the probable cause standard applies because the government doesn't argue otherwise. "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "It requires 'only a probability or substantial chance

of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983)).

The district court committed no error in finding that Capps had probable cause to stop Macklin. Capps testified that she saw Macklin failing to completely stop at a stop sign, and the magistrate judge found Capps's testimony credible. That finding carries "considerable weight" as "[f]indings of fact anchored in credibility assessment are generally not subject to reversal upon appellate review." *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998) (quoting *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992)); *see United States v. McNeal*, 955 F.2d 1067, 1071 (6th Cir. 1992) (findings that are "expressly anchored in credibility evaluations of witnesses who testified during the suppression hearing . . . [are] beyond appellate review").

Macklin responds that under Tennessee law, at the type of intersection in this case, "a driver is expected to stop as near to the intersection as necessary to obtain a view of the traffic going both ways." So, Macklin argues, he stopped somewhat beyond the stop sign (as he was required to), rather than rolling through it, thus vitiating probable cause. Again, the magistrate judge found Capps's testimony that Macklin failed to stop to be credible. That finding alone disposes of Macklin's argument. And bear in mind that we must view the evidence in the government's favor. But even if we didn't, and we assume Macklin rolled through the stop sign for safety, Capps still had "reasonable grounds for belief" that there was a "probability" that Macklin had really just failed to come to a complete stop. *Smith*, 182 F.3d at 477. Officers have no obligation to "rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018); *see also Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (reasonable mistakes of fact will not undermine probable cause; consistent with the Fourth Amendment, "[a]n officer

might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the back seat").

Macklin also suggests that Capps and Matheny intentionally destroyed footage of the traffic stop, which in his estimation bears on the question of probable cause. Macklin's argument misses the mark, though, because any destruction of the in-car footage says nothing of whether Macklin rolled through the stop sign. True, it could affect Capps's credibility. But once more, the magistrate judge, who was in the best position to assess the credibility of the witnesses, found Capps's "testimony regarding the traffic offense to be very clear, quite consistent, and very credible."

Moreover, the evidence supports the magistrate judge's finding that the lack of in-car footage was inadvertent rather than intentional. Capps's body-camera footage showed her in-car video operating as she left the squad car, and the footage contained no evidence of her manually turning it off. Capps testified that there must have been some "technical issue[]" and that she did nothing to interfere with the recording. And Officer Cash's testimony, which the magistrate judge also credited, shores up the conclusion that the video footage was inadvertently cancelled by Capps turning the squad car's front lights off within seconds of turning them on; Matheny's body-camera footage confirms that the car's front lights were indeed off, whereas the other patrol cars' front lights were on. On Macklin's side of the evidentiary scale, we have speculation—Capps could have cancelled the recording manually. We fail to see how, given this evidence, it was clearly erroneous for the district court to credit Capps's version of events.

And, contrary to Macklin's suggestion, whether this failure to record the traffic stop violated Memphis Police Department policy or Macklin's due-process rights is beside the point. The existence of probable cause under federal law deems the stop reasonable; "state restrictions

do not alter the Fourth Amendment's protections" in this context. *Virginia v. Moore*, 553 U.S. 164, 176 (2008); *see United States v. Jones*, 953 F.3d 433, 438 (6th Cir. 2020). Nor have we ever found a due-process violation to trigger application of the exclusionary rule, a rule which "bars the prosecution from introducing evidence obtained by way of a *Fourth Amendment* violation." *Davis v. United States*, 564 U.S. 229, 232 (2011) (emphasis added). Macklin offers little reason for us to expand the exclusionary rule to his case—one in which we doubt there was a due-process violation at all considering the magistrate judge found, without clear error, that the loss of the in-car footage was inadvertent rather than in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Because Capps had probable cause to stop Macklin, his Fourth Amendment rights were not violated. The district court therefore rightly denied Macklin's motion to suppress the gun found on him as a result of the traffic stop.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.