NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0109n.06

No. 24-1471

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) ) | STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF |
| REGINALD L. HUNTER, | ) | MICHIGAN |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

FILED
Feb 26, 2025
KELLY L. STEPHENS, Clerk

Before: BATCHELDER, LARSEN, and RITZ, Circuit Judges

LARSEN, Circuit Judge. Reginald Hunter pleaded guilty to conspiracy to commit murder for hire and murder for hire. He now appeals his conviction, arguing that state troopers conducted an unlawful traffic stop that led to the discovery of incriminating evidence against him. For the following reasons, we AFFIRM.

I.

While on patrol in Flint, Michigan state troopers Nicholas McCabe and Merik Whipple stopped a Chevy Malibu. The Malibu drew the troopers' attention when it made an abrupt turn, which the officers believed was designed to evade the patrol car. The patrol car's dashcam recorded much of the incident thereafter. The dashcam footage begins by showing the officers turning left from Welch Boulevard onto Pontiac Street. As the troopers are making that turn, the dashcam video provides a brief glimpse of the taillights of a car ahead. The footage then shows the officers driving down Pontiac and turning right onto Copeman Boulevard. The dashcam shows

a sedan ahead, at the intersection of Copeman and Dupont Street. While not clear from the footage, it appears that the sedan had just turned left from Copeman onto Dupont. The camera shows the officers turning left from Copeman onto Dupont, at which point the sedan is once again visible on the dashcam, now turning right from Dupont onto Begole Street. The officers pursue the sedan, turning right onto Begole. The footage then shows the sedan pulling into a driveway on Begole. At that point, the officers turned their emergency lights on and pulled up behind the sedan—a Chevy Malibu.

During the stop, Troopers McCabe and Whipple seized two loaded rifles from the Malibu's passenger compartment. They then arrested both the driver, Julius Jordan, and passenger, Reginald Hunter, and transported them to the police station. In police custody, Hunter and Jordan made recorded phone calls suggesting their involvement in a murder-for-hire plot. Through those recorded phone calls and additional cell-phone communications, investigators learned that Hunter and Jordan had travelled in a rental car from Alabama to Michigan to commit a murder for hire.

Hunter and Jordan were later charged with conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958(a); murder for hire, in violation of 18 U.S.C. § 1958(a); and possession of an unregistered short barrel rifle, in violation of 26 U.S.C. § 5861(d). Hunter moved to suppress the seized guns, arguing that the traffic stop was illegal. The district court held a hearing on the suppression motion. The dashcam recording was admitted into evidence, and Troopers McCabe and Whipple testified. Both officers testified that they stopped the Malibu for failing to come to a complete stop, behavior both officers witnessed at the corner of Copeman & Dupont and which Whipple also observed at Pontiac & Copeman. The district court credited the troopers' testimony and found that probable cause existed to conduct the stop. With his suppression motion denied, Hunter entered a conditional guilty plea, waiving his right to appeal

except for any grounds raised in pretrial motions. The court sentenced him to 180 months in prison. Hunter now appeals, arguing that the district court erred by denying his motion to suppress.

## II.

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. An ordinary traffic stop constitutes a seizure, and "evidence seized during an illegal traffic stop must be suppressed as fruits of the poisonous tree." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (citation omitted). But an officer "lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred." *Id.* An officer certainly has probable cause to conduct a traffic stop when he personally observes a traffic violation. *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020). Failure to stop at a stop sign is a traffic violation in Michigan. Mich. Comp. Laws § 257.649(8).

We review a district court's factual findings on a motion to suppress for clear error and its legal conclusions de novo. *Jackson*, 682 F.3d at 452. When the district court has denied the suppression motion, "we review all evidence in a light most favorable to the Government." *Id.* at 452–53 (citation omitted).

Hunter makes just one argument on appeal: the district court erred by finding that McCabe and Whipple had probable cause to stop the Malibu. Hunter claims that "the officers could not have witnessed the traffic violation" because they "were not in a position to clearly see the conduct of the Malibu." Appellant Br. at 12. And he says that that the dashcam footage "showed the Malibu stopped at each stop sign," "plainly contradict[ing] the officers' testimony." *Id.* at 12, 14.

The district court did not err by concluding that Troopers McCabe and Whipple had probable cause to conduct the traffic stop. McCabe testified that, while he and Whipple were driving on Welch, he observed a Chevy Malibu "make an abrupt turn" from Welch onto Pontiac.

R. 98, Evidentiary Hearing Tr., PageID 657. Suspecting that the turn was made "to evade our patrol vehicle," McCabe and Whipple turned onto Pontiac and began following the Malibu. *Id.* McCabe testified that "[a]s we [we]re coming to the intersection of Pontiac and Copeman, I was looking over my right shoulder at the vehicle" and "could see the [Malibu] yielding to traffic on Dupont but not coming to a complete stop at the stop sign." *Id.* at 658.

Whipple's testimony tracked McCabe's. He testified that, while driving on Welch, they observed "a dark-colored Chevrolet Malibu . . . suddenly brake[] and turn[] southbound onto Pontiac." R. 99, Evidentiary Hearing Tr., PageID 746. He further testified that he saw the Malibu "not make a complete stop" at both Pontiac & Copeman and Copeman & Dupont. *Id.* at 749, 751.

The district court reasonably credited McCabe and Whipple's testimony. First, the video evidence does not contradict the troopers' version of the events. The dashcam footage provides only fragmentary shots of the Malibu. It doesn't capture the crucial moments when the Malibu approached the two intersections in question. So, as the district court found, the dashcam footage is inconclusive—it simply does not show whether the Malibu came to a complete stop at either intersection.

Next, the district court found it credible that McCabe and Whipple could see more than what the footage showed, given "the stationary nature of the dashcam." *Id.* at 799. The court rejected Hunter's argument that, from the officers' vantage point, they couldn't have seen the Malibu fail to stop. Instead, the judge found the officers' testimony "consistent with what I saw in the pictures, in the diagrams of the area, and the video that was played from three different vantage points." *Id.* at 799–800.

The record provides no reason for this court to second-guess the district court's conclusion that Troopers McCabe and Whipple were credible. When reviewing whether officers had probable

cause to conduct a traffic stop, we must give "due regard" to the trial court's opportunity to judge witness credibility. *United States v. Blair*, 524 F.3d 740, 749 (6th Cir. 2008) (citation omitted). And "findings of fact anchored in credibility assessment are generally not subject to reversal upon appellate review." *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998) (citation omitted); *see also Jackson*, 682 F.3d at 453–54 ("The district court found Officer Meech's uncontradicted testimony in this regard to be credible, a conclusion entitled to deference on appeal.").

Here, the district court's probable-cause determination turned largely on its credibility assessment of McCabe and Whipple. And McCabe and Whipple's testimony was coherent and consistent with the record. Therefore, the district court did not err by crediting the troopers' testimony and finding that they had probable cause to stop the Malibu.

\* \* \*

We AFFIRM.