NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3745
_____

UNITED STATES OF AMERICA

v.

SEAN L. HAGINS,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-06-cr-00485-001)
District Judge: Honorable Legrome D. Davis
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2011

Before:  McKEE, Chief Judge, RENDELL and AMBRO, Circuit Judges

(Opinion Filed: November 18, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendant Sean Hagins appeals his criminal conviction for conspiring to straw-purchase firearms and possessing firearms as a convicted felon.  Hagins argues that the District Court improperly denied his motion to suppress evidence; his motion to sever offenses; his motion to dismiss the indictment; and his motion *in limine* to exclude certain

evidence. He also contends that the evidence was insufficient to sustain the jury's guilty verdict; and that he was denied effective assistance of counsel in the course of his trial. For the reasons set forth below, we will affirm.

Background

Hagins was arrested in December 2004 based on the following circumstances. Alexander Panchenko was driving on Interstate 95 in Philadelphia when a white Audi with New Jersey plates cut him off repeatedly. Hagins, who was driving the Audi, yelled obscenities and then pointed a gun at Panchenko. The Audi exited I-95 at Cottman Avenue. Panchenko called the police and described the driver as a black male with dreadlocks, described the car as a white Audi with New Jersey plates, and reported that the car exited the interstate at Cottman Avenue. Three police officers heard the resulting broadcast report and drove toward Cottman Avenue. They arrived there two minutes after Panchenko alerted the police, saw a car matching Panchenko's description, and pulled it over. As the officers approached the vehicle, Hagins repeated, "It was a radio face," suggesting that he had not pointed a gun but a face plate for a car stereo system at Panchenko. The police ordered Hagins out of the car. While one officer was talking with Hagins, another officer searched the car and found a gun tucked into a space between the center console and the floor on the driver's side of the car. Panchenko was brought to where Hagins was stopped and positively identified him as the man who pointed the gun at him on Interstate 95. Thereafter, Hagins was placed under arrest.

Before his arrest, Hagins also orchestrated straw purchases of firearms through David Downs because, as a convicted felon, Hagins could not purchase firearms himself.

2

Downs purchased about fifty guns for Hagins between September 2004 and June 2005. In exchange, Hagins paid Downs and also provided him crack cocaine. Federal investigators confronted Downs with suspicions that he had engaged in straw purchases. Downs confessed his involvement, identified Hagins as the person for whom he was purchasing the weapons, and agreed to cooperate with the Government's investigation. Downs wore a wire in conversations with Hagins between January 2006 and February 2006, in which the two agreed that Downs would purchase more guns for Hagins.

In December 2007, a grand jury returned a seven-count second superseding indictment that charged Hagins with the following: one count of conspiring to straw-purchase firearms in violation of 18 U.S.C. § 371 ("Count One"); two counts of using a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) ("Count Two" and "Count Three"); and four counts of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) ("Count Four", "Count Five", "Count Six", and "Count Seven").

Hagins was tried by a jury in February 2008. The jury returned a verdict finding Hagins guilty of Count One and Counts Four through Seven; it acquitted him on Counts Two and Three. Thereafter, Hagins moved for a judgment of acquittal and/or for a new trial; he also filed various post-trial motions. The District Court denied all of Hagins' motions, and sentenced him to 360 months' imprisonment.

## Discussion

We address each of Hagins' arguments in turn.

3

A.  Motion to Suppress Evidence From The 2004 Arrest

Hagins contends that the stop and search of his vehicle in December 2004 was illegal because the police officers did not have probable cause to arrest him and search the vehicle when they did.  In the alternative, Hagins contends that even if he was subject only to a *Terry* stop, the officers did not have reasonable suspicion to stop him and to search his car.  Therefore, he submits that physical evidence seized from his car, the gun, should have been suppressed.

When reviewing the denial of a suppression motion, we review the factual findings of the district court for clear error, and exercise plenary review over the application of law to those facts.  *United States v. Pierce*, 622 F.3d 209, 210 (3d Cir. 2010).

First, Hagins asserts that he was *de facto* arrested without probable cause when he was removed from his car and handcuffed while officers searched his vehicle.  This argument is untenable in light of our decision in *United States v. Johnson*, 592 F.3d 442, 447-48 (3d Cir. 2010) (holding no *de facto* arrest occurred where the police encircled the car, drew their weapons, yelled at the occupants, and handcuffed the suspect).  As such, Hagins was not arrested when he was removed from the vehicle, and therefore no probable cause was required at the time the police searched Hagins' car.

Hagins contends that, even if his removal from the vehicle amounted only to a *Terry* stop, the officers did not have reasonable suspicion to remove him and to search his car.  Under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may conduct a brief investigatory stop when the officer has reasonable, articulable suspicion that criminal activity is afoot.

*United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (internal citations omitted). Courts evaluate whether reasonable suspicion exists at the time of the stop based on the "totality of the circumstances." *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000).

As the District Court correctly analyzed, the facts here demonstrate that the officers had reasonable suspicion that criminal activity was afoot when they stopped Hagins. Just a few minutes after Panchenko called the police to report the incident on Interstate 95, the officers found, at the location identified, a car and a driver which matched Panchenko's description. When the officers approached Hagins, he told them it was not a gun but a face plate that he pointed at Panchenko. This statement corroborated Panchenko's version of the incident, and confirmed Hagins' involvement in the altercation. Based on these facts, the police had reasonable suspicion to believe Hagins was armed. Ordering him out of the vehicle was, as such, a permissible *Terry* stop.

Given that the officers had reasonable suspicion that Hagins was armed, the officers also properly performed a *Terry* search of the passenger compartment of Hagins' car, where they found the gun. *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1986) (holding that during a traffic stop, an officer may conduct a search of the passenger compartment of the vehicle if the officer has reasonable suspicion that the occupants might be armed and dangerous).

Hagins mistakenly relies on *Arizona v. Gant*, 556 U.S. 332 (2009), to support his argument, asserting that the police were not authorized to perform a search of the vehicle because he was already secured outside the vehicle. But *Gant* does not apply to this case.

5

*Gant* clarifies the search incident to arrest exception to the warrant requirement, but leaves untouched the *Terry* stop and search exception to the warrant requirement. The search incident to arrest exception is simply not applicable here.

In sum, because the officers had reasonable suspicion to stop Hagins and to perform a search of the passenger compartment of the car, the District Court did not err in denying his motion to suppress the gun found in his car from evidence.

B.     Motion to Sever Offenses

Hagins contends that the District Court erred in denying his pre-trial motion to sever Count Seven from Counts One through Six of the second superseding indictment because Counts One through Six related to the conspiracy to straw-purchase weapons between Downs and him, while Count Seven, charging him with being a felon in possession of a firearm, related to his December 2004 arrest and thus did not involve Downs.

We review the denial of a motion to sever offenses for abuse of discretion. *United States v. Hart*, 273 F.3d 363, 369 (3d Cir. 2001). Multiple offenses may be joined in three circumstances: (1) when they are based on the same transaction; (2) when they constitute part of a common scheme or plan; and (3) when they are of the same or similar character. Fed. R. Crim. P. 8(a). Multiple offenses, in turn, may be severed if their joinder appears to prejudice a defendant. Fed. R. Crim. P. 14.

Hagins contends that there is no transactional nexus between Counts One through Six and Count Seven, and that they are not part of a common scheme or plan. But the District Court correctly concluded that the Counts are of the same or similar character:

6

Counts Four through Seven are all felon-in-possession offenses. It does not matter that each Count identifies different acts of possession at different times.

Moreover, the District Court's denial of this motion did not prejudice Hagins. To establish that severance is warranted under Rule 14, a defendant must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial. *United States v. Eufrasio*, 935 F.2d 553, 569 (3d Cir. 1991). Hagins does not point to any specific evidence showing prejudice; he simply states that the jury was unable to separate the December 2004 incident from the straw purchase conspiracy, and that the jury improperly inferred a criminal disposition. These bald assertions do not demonstrate "clear and substantial prejudice." Therefore, the District Court did not abuse its discretion in denying Hagins' motion to sever offenses.

C.    Motion to Dismiss the Second Superseding Indictment

Hagins asserts that the District Court improperly denied his motion to dismiss the second superseding indictment because the Government engaged in outrageous conduct by issuing it. He claims that after he chose to exercise his right to trial by jury, the Government vindictively issued the second superseding indictment that included Count Seven for the first time, which was based on the December 2004 arrest. He also contends that the Government's use of Downs as the main witness was outrageous because Downs, Hagins alleges, lied to law enforcement and signed a false affidavit. Finally, Hagins submits that two witnesses, Victor Lawson and Gilbert Nickens, were planted in the prison where Hagins was held in order to elicit incriminating information from him.

When reviewing a claim of outrageous government conduct, we exercise plenary review over the district court's legal conclusions, and review any challenges to the district court's factual findings for clear error. *United States v. Hoffecker*, 530 F.3d 137, 153 (3d Cir. 2008). In order to prevail on this argument, the government's conduct must be "shocking, outrageous, and clearly intolerable." *United States v. Nolan-Cooper*, 155 F.3d 221, 230 (3d Cir. 1998). Outrageous government conduct is an extraordinary defense reserved only for the most egregious circumstances. *Id.* at 230-31.

Here, the District Court properly denied Hagins' motion. The simple fact that the Government issued a second superseding indictment after Hagins refused to cooperate and chose to exercise his right to a jury trial does not support a claim for outrageousness. *See United States v. Goodwin*, 457 U.S. 368, 380 (1982) ("[A] prosecutor may file additional charges if an initial expectation that a defendant would plead guilty . . . proves unfounded.").

Similarly, Hagins points to no specific facts that support his contention that the Government's use of Downs as a witness was outrageous. It does not matter if Downs lied or provided false information to law enforcement, an assertion which is in no way substantiated here. As the District Court noted in its opinion denying the motion, "the fact that a cooperating witness for the government engaged in unlawful activity does not render his employ inherently outrageous . . . ." (Supp. App. 22.)

Hagins also submits that the Government's use of witnesses who were allegedly planted as jailhouse informants was outrageous. Use of jailhouse informants raises a potential Sixth Amendment right to counsel violation. A defendant's right to counsel is

8

violated when (1) the right to counsel had attached at the time of the alleged infringement; (2) the informant was acting as a "government agent"; and (3) the informant engaged in "deliberate elicitation" of incriminating information from the defendant. *Matteo v. Superintendent*, 171 F.3d 877, 892 (3d Cir. 1999) (internal citations omitted).

Hagins and Lawson played Scrabble together in prison and they discussed their cases together after discovering that they had similar criminal histories. Lawson cooperated with the Government by relaying these conversations to investigators, and testified to these discussions at Hagins' trial. Lawson's cooperation did not stem from his being a government agent. According to his testimony, he instead reported the conversations to the Government in order to get a more lenient sentence. Thus, using Lawson's testimony was neither outrageous nor a violation of Hagins' right to counsel because Lawson was not a government agent.

Nor was using Nickens' testimony outrageous or a violation of Hagins' right to counsel. First, Nickens and Hagins were never in prison together; therefore, use of his testimony did not violate Hagins' right to counsel. Second, use of Nickens' testimony was not outrageous; Nickens simply testified about previously purchasing weapons from Hagins.

Therefore, the District Court properly denied Hagins' motion to dismiss the second superseding indictment.

D.    Motion *in Limine*

Hagins asserts that the District Court improperly denied his motion *in limine* to exclude recorded conversations between Downs and Hagins occurring from January to February 2006. Downs cooperated with the Government in having and recording these conversations, which occurred about six months after Downs made his last straw purchase for Hagins. As such, Hagins contends that the conversations are irrelevant, inadmissible other bad acts evidence, or unfairly prejudicial because the conspiracy between Downs and him occurred from September 2004 to June 2005.

We review a district court's decision to admit evidence for abuse of discretion, which "may be reversed only when clearly contrary to reason and not justified by the evidence." *United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001) (internal citations and quotation marks omitted).

The District Court correctly concluded that the conversations fall squarely within Rule 401's definition of relevant evidence. Rule 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Hagins and Downs discussed previous purchases that Downs made for Hagins, and referenced specific guns Downs purchased, the possession of which Hagins was charged with in the indictment, as well as specific stores from which Downs purchased them. These conversations are clearly relevant, as they tend to make it more probable that Hagins actually committed the offenses with which he was charged.

10

Next, Hagins contends that the conversations are impermissible Rule 404(b) evidence. Rule 404(b) bars admission of evidence of other bad acts if it is admitted to show a defendant's propensity to commit the offense at issue. But evidence of other bad acts may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b).

The District Court correctly concluded that the conversations were admissible under 404(b) because they (1) show Hagins' intent, opportunity and preparation for conducting future straw purchases, (2) make direct references to Hagins' knowledge of the methods used to conceal the origins of illegally obtained weapons, and (3) evidence the common plan between Downs and him. These are all valid reasons to admit the conversations.

Finally, Hagins contends that the conversations were unfairly prejudicial and of limited probative value because the jury would conclude automatically that Hagins had interacted with Downs in the past. Rule 403 permits the district court to exclude relevant evidence whose "probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403.

While the conversations here are certainly prejudicial, they are not *unfairly* so. *See Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (noting that Rule 403 "does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case"). Evidence is unfairly prejudicial only when it has "an undue tendency to suggest decision on an improper basis, commonly, though not

11

necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee's Note. The conversations here offer no hint of prejudice of this sort. Moreover, they are highly probative of the fact that Hagins and Downs had a straw purchasing arrangement, and their significant probative value is not substantially outweighed by any danger of unfair prejudice.

Therefore, the District Court did not abuse its discretion in denying the motion *in limine* to exclude the recorded conversations.

E.       Sufficiency of the Evidence

Next, Hagins urges that the evidence presented to the jury was insufficient to prove the charges against him. Hagins asserts that the evidence was insufficient because the District Court should never have permitted the jury to hear allegedly false and incredible testimony from Downs, Lawson and Nickens.

We apply a particularly deferential standard of review to a challenge of a conviction for insufficiency of the evidence. An insufficiency claim places a very heavy burden on a defendant. Viewing the evidence in the light most favorable to the government, "we will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal citations and quotation marks omitted).

It is inappropriate for this Court to consider whether these witnesses' testimony was false or incredible when reviewing the sufficiency of the evidence. *See United States v. Beckett*, 208 F.3d 140, 151 (3d Cir. 2000) (emphasizing that a reviewing court does not determine the credibility of witnesses on an insufficiency of the evidence challenge).

12

Their testimony was properly allowed, and in viewing their testimony in the light most favorable to the Government, a rational trier of fact could certainly have found that the essential elements of the crimes were proven beyond a reasonable doubt.

Hagins also asserts the evidence was insufficient to sustain the felon-in-possession conviction stemming from his December 2004 arrest. Given that the gun found in Hagins' car was properly admitted and not subject to suppression, *see supra*, the evidence was sufficient to sustain Hagins' conviction on Count Seven.

Therefore, we find that the evidence was sufficient to sustain Hagins' convictions on Count One and Counts Four through Seven.

F.      Ineffective-Assistance-of-Counsel Claim

Finally, Hagins raises an ineffective-assistance-of-counsel claim, asserting that his lawyer was ineffective during the course of his trial for not calling certain witnesses and for not investigating the end possessors of the firearms. While we normally do not entertain claims for ineffective assistance of counsel on direct appeal, a narrow exception exists where the record is sufficient to allow determination of the claim, and an evidentiary hearing to develop the facts is not needed. *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991). Here, the District Court conducted a thorough hearing on Hagins' post-trial ineffective-assistance-of-counsel claim. Given that the record is sufficiently developed, we will entertain the ineffective-assistance-of-counsel claim on appeal.

When entertaining a claim of ineffective assistance of counsel on direct appeal, we review the district court's findings of fact for clear error, and make an independent

13

judgment on whether the facts constitute ineffective assistance of counsel. *Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430-31 (3d Cir. 1996). To make out an ineffective-assistance claim, the defendant must show that his trial counsel's performance was deficient and that such performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must establish a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694.

Hagins contends that his brother, Craig, should have testified on his behalf at trial in order to impeach Downs. Downs testified that he purchased a gun for Hagins, and turned it over to Craig, but Craig would have testified that he did not know Downs. Matthew Engle, Hagins' lawyer during the trial, testified that he did not call Craig because Craig testified before the grand jury, and Engle was concerned about implicating Craig's Fifth Amendment rights and wanted to avoid any possible obstruction of justice. Also, Engle did not believe that Craig's testimony would significantly call into question Downs' credibility. Craig also had a troubled criminal history, the airing of which would not do much to advance Hagins' defense.

Hagins also contends that his wife should have been called to testify in order to impeach Panchenko. Panchenko testified that Hagins' wife was present during the December 2004 incident, but she was not. Her testimony might have called into question Panchenko's ability to observe and make accurate identifications. But impeaching Panchenko in this regard would not have added significantly to Hagins' defense.

14

Finally, Hagins asserts that Engle should have investigated the end possessors of the firearms to determine who provided the guns to them. Had counsel done so, the end possessors might have testified that they did not acquire the guns from Hagins. But Hagins produced no such testimony at his post-trial hearing before the District Court. This assertion is not enough to show prejudice, for prejudice cannot be demonstrated by speculation about what the witnesses that the attorney failed to locate or depose might have said. *See United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989).

Here, the District Court correctly concluded that none of the alleged errors "begin[s] to approach error as contemplated by *Strickland*." (Supp. App. 35 n.2.) As such, we find that Hagins' ineffective-assistance claim fails on both prongs.

<u>Conclusion</u>

For the foregoing reasons, we will affirm the judgment of the District Court.