NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0650n.06

**No. 11-5604**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 20, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| LANDREO LURRY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

ROGERS, Circuit Judge. Defendant Landreo Lurry is a felon who sought suppression of a

confession and a weapon in his possession that was seized during a roadside detention for license

suspension. During a routine traffic stop, police officers approached a car driven by Lurry in

Memphis, Tennessee. Lurry began moving furtively, causing the police to rush to the driver-side

door of the vehicle. As Lurry exited the car, one of the officers saw a plastic bag containing shotgun

shells sitting on the vehicle's rear seat. The officer searched the vehicle and recovered a sawed-off

shotgun. Lurry was charged with being a felon in possession of a firearm, in violation of 18 U.S.C.

§ 922(g). Relying on the plain-view doctrine, the district court denied Lurry's motion to suppress

the shotgun. Lurry entered a conditional plea of guilty, and now appeals. Even though Lurry is

correct that the plain-view doctrine does not apply in this case, suppression was still not required

because the officers properly conducted a protective search.

On August 12, 2009, Officers Williams and Hazelrig of the Memphis Police Department initiated a traffic stop of a Chevrolet Cavalier after an automatic license plate reader unit indicated that a warrant existed for the vehicle's owner or occupant. After the Cavalier pulled over, Officer Williams noticed that the driver—Lurry—was "moving around a lot" and "nudging on the driver's [side] door." Believing this behavior was consistent with flight, Officer Williams ran toward the car and told Lurry to "quit moving so much." In response, Lurry exited the car and told the officers that his driver's license was suspended.[1] Officer Williams frisked Lurry for weapons, and spotted a plastic bag full of shotgun shells on the "rear seat right behind the driver's side." Lurry was placed in the back of the squad car, but was not handcuffed.

Officer Williams told Officer Hazelrig that he suspected that Lurry had a shotgun in the car. While Officer Hazelrig conducted a background check, Officer Williams searched the Cavalier. He found a sawed-off shotgun underneath the passenger seat, and returned to the squad car to arrest Lurry. As Officer Williams opened the door, Lurry jumped out and exclaimed, "I ain't going to jail." The officers subdued and arrested Lurry after a two-minute struggle.

Lurry was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Before trial, Lurry moved to suppress the shotgun as well as various statements he had made to police. After considering the motion, a magistrate judge recommended that the court find that the search was permissible because the officers saw the shotgun shells in plain view. The district court

---

[1] The government, in its brief, represents that Lurry got out of the car before the officers approached, and rapidly approached the officers. This is contrary to the record.

adopted the R&R, and clarified that the officer had "sufficient justification" to search Lurry's car based on the presence of shotgun shells in plain view. *United States v. Lurry*, No. 2:09-cr-20312, 2010 WL 4628129, at *5 (W.D. Tenn. Nov. 8, 2010). Lurry filed a conditional plea of guilty, and timely appeals.

The plain-view exception does not apply in this case because the incriminating character of the shotgun shells was not immediately apparent. Under the plain-view doctrine, an object may be seized (1) if the "police are lawfully in a position from which they view an object," (2) "if [the object's] incriminating character is immediately apparent," and (3) "if the officers have a lawful right of access to the object." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). The criminality of an object is not immediately apparent "if [the object] appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity." *United States v. Garcia*, 496 F.3d 495, 510 (6th Cir. 2007) (citations omitted). Here, the criminality of the shotgun shells was not immediately apparent because Lurry's possession of them was illegal only due to his status as a felon. It is undisputed that Tennessee permits an ordinary person to transport shotgun shells in a vehicle, or even a shotgun as long as there is no ammunition in the chamber. *See* Tenn. Code Ann. § 39-17-1307(e)(1). Further, it is undisputed that the officers commenced the search before they knew of Lurry's criminal history. When the officers commenced the search, all they knew was that Lurry had a suspended license and that shotgun shells were on the back seat. At that point, they could not have known that Lurry could not lawfully possess a firearm

or that a crime was being committed. Accordingly, the plain-view exception does not apply in this case.

Nonetheless, the search of Lurry's vehicle was a permissible protective search under *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983). Although the government raises this argument for the first time on appeal, we "may affirm on alternative grounds supported by the record." *Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009). During a *Terry* stop, *Long* allows officers to search an automobile's passenger compartment for weapons if the officers have a reasonable belief—"based on 'specific and articulable facts'"—that the suspect is dangerous and may "gain immediate control of weapons." *Long*, 463 U.S. at 1049 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). This rule recognizes that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Id.* at 1047. Although *Long* does not apply where the suspect is handcuffed and under arrest, *see Arizona v. Gant*, 556 U.S. 332, 351 (2009), it applies where the suspect is not secured and might imminently reenter the car. *Long*, 463 U.S. at 1051.

After assessing the totality of the circumstances, Officer Williams had a reasonable belief that a weapon might be present. Following a valid traffic stop, the officers observed Lurry making "furtive movements" inside his vehicle. The movements were of such a nature that the officers felt it necessary to rush to the driver-side door and direct Lurry to exit the vehicle. After Lurry exited the vehicle, Officer Williams conducted a patdown for officer safety, the constitutionality of which Lurry does not challenge. During the patdown, Officer Williams observed shotgun shells on the rear seat of Lurry's car. Lurry argues that the presence of the shells did not necessarily mean that a

shotgun was present. Certainty of a weapon's presence, however, is not the standard. As the Supreme Court has stated, "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). The presence of the shells, combined with Lurry's furtive movements, provided Officer Williams with a reasonable belief that a weapon could be in the car.

Courts have applied the *Long* rule in cases substantially similar to Lurry's case. In *Long* itself, the search was permissible because the officers observed a large hunting knife in the interior of the car into which the defendant was about to reenter. *Long*, 463 U.S. at 1050. Although the knife was lawfully possessed and the suspect was in police custody, the Court permitted the officers to search the car to ensure other weapons were not also present. *Id.* at 1051, 1052 n.16. In *United States v. Ware*, the officers conducted a protective search of a car after stopping the defendant. No. 09-4419, 2012 WL 695452, at *7 (6th Cir. Mar. 1, 2012). This court upheld the search because the officers had received an anonymous tip that the defendant had a gun and drugs, and because the defendant was standing without handcuffs near the car. *Id.* Similarly here, the shotgun shells provided the officers with notice that a weapon could be present and Lurry would soon regain access to the weapons once he returned to the car at the conclusion of the *Terry* stop.

Further, Lurry's access to the location of the weapon justified a protective search. Lurry argues that, under *Gant*, 556 U.S. at 351, the police could not perform a search of the vehicle because Lurry was secured outside the vehicle. "*Gant*, however, dealt with a search incident to arrest and prohibited a search where there was no 'possibility of access' by the suspect." *United States v.*

*Walker*, 615 F.3d 728, 734 (6th Cir. 2010) (citations omitted). *Gant* does not apply to cases where the suspect has not yet been arrested:

> It must be borne in mind that we are speaking here only of a rule automatically permitting a search when the driver or an occupant is arrested . . . . In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed.

*Gant*, 556 U.S. at 352 (Scalia, J., concurring). Other circuits have similarly read the *Gant* rule to be limited to searches conducted incident to arrest. *See, e.g., United States v. Hagins*, 452 F. App'x 141, 146 (3rd Cir. 2011); *United States v. Vinton,* 594 F.3d 14, 24 n.3 (D.C. Cir. 2010); *United States v. Griffin*, 589 F.3d 148, 154 n.8 (4th Cir. 2009). In short, because this was a *Terry* stop, Lurry would have been allowed to return to the vehicle when the brief investigation concluded. At that point, unlike the arrestees in *Gant*, Lurry would regain control of the vehicle and any weapons reasonably believed to be therein.

The validity of the search is not, as Lurry argues, dependent on whether Lurry possessed the shotgun shells lawfully. In *Long*, the defendant argued that the search was unconstitutional because it was based on the discovery of a hunting knife that defendant possessed lawfully. *Long*, 463 U.S. at 1052 n.16. The Supreme Court rejected this argument because the protective searches are not premised on whether a weapon is legally or illegally possessed. *Id.* This inquiry instead focuses on officer and public safety. *Id.* If the officers deem a weapon to pose a threat to themselves or the public, it does not matter whether the weapon is possessed legally. *Id.* The legality of Lurry's possession of shotgun shells, therefore, is irrelevant.

The judgment of the district court is affirmed.

**KAREN NELSON MOORE, Circuit Judge, concurring.** I concur in the majority opinion and write separately only to raise a concern over the propriety of the initial traffic stop in this case, an argument that Lurry does not make. Lurry was stopped solely because an automatic license-plate reader indicated that the address on the female owner's vehicle registration matched the address on a black male's outstanding arrest warrant for driving on a suspended license. I do not see how that information even remotely suggests that a warrant existed for a current "occupant" of the pursued vehicle because that information suggests nothing about who is currently occupying the vehicle. Just because a black male with a warrant at one point lived at an address where a female's vehicle is now registered is no reason to think that the present driver of the female's vehicle, who happens to be a black male, is likely that same individual. This case offers yet another example of why automatic license-plate readers warrant further attention under the Fourth Amendment, a position I raised in greater detail in my dissent in *United States v. Ellison*, 462 F.3d 557, 566-71 (6th Cir.) (Moore, J., dissenting), *cert. denied*, 552 U.S. 947 (2007). However, because Lurry has not raised this argument, I concur in this case.