NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0483n.06

No. 23-5058

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 22, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| MICHAEL DUNN, JR., | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: WHITE, NALBANDIAN, and MURPHY, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant Michael Dunn, Jr. pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 921(g)(1) and 924(a)(2). He appeals the district court's denial of his motion to suppress evidence obtained and statements made during a traffic stop, arguing that police unconstitutionally prolonged the stop and questioned him without administering *Miranda* warnings. For the reasons set forth below, we **AFFIRM**.

**I.**

**A.**

On May 4, 2020, Louisville Metro Police Officer Jay Dolak observed Dunn driving with an excessively tinted windshield, a traffic violation under Kentucky law.[1] Dolak called for backup and was joined by another officer, Jeffrey Emerich. Dolak then directed Dunn to pull over to the

---

[1] *See* Ky. Rev. Stat. Ann. §§ 189.110(2), 189.990(1).

shoulder of Interstate 65. As Emerich approached the passenger side, Dolak approached the driver's side window and asked Dunn for his driver's license. He saw a knotted piece of plastic in Dunn's lap that appeared to Dolak to be the torn-off end of a baggie. He also saw a Styrofoam cup and a bottle of soda in the center console. In an investigative report written shortly after the stop, Dolak described the cup as containing "a pink liquid substance." R.19-2, PID 62. When the cup briefly appears on Dolak's body-camera footage, however, it appears dark in color.

Dolak asked Dunn, "what's in that baggie in your lap? Did you eat it?" R.19-3, Dolak Body Camera Footage, 01:42-01:50. Dunn did not respond verbally, but instead opened his mouth to show it was empty. Dolak returned to his patrol car to run Dunn's driver's license through the National Crime Information Center (NCIC) database and discovered it was suspended. He walked back to Dunn's car and asked, "there ain't nothing of whatever was in that baggie in the car, is there?" *Id.*, 03:24-03:26. Dunn responded, "no, but I got a gun," and explained that he had been shot. *Id.*, 03:27-03:30.

Dolak asked Dunn to get out of his car. After he did, Dolak asked, "you good with me looking?" *Id.*, 03:54. Dunn said yes, and Dolak asked again, "you are? You good with me taking a look?" *Id.*, 03:55-03:56. Dunn again said, "yeah." *Id.* Dolak then retrieved the gun from a child's car seat and returned to his car to run the serial number while Emerich remained with Dunn. Unprompted, Dunn said, "I'm going down." R.19-3, Emerich Body Camera Footage, 05:26. Emerich asked if Dunn was a felon, and Dunn responded that he had just finished probation. Emerich asked, "for a felony? Are you a felon? You're a convicted felon?" *Id.*, 05:36-05:40. Dunn responded, "yeah." *Id.,* 5:40-5:41. Emerich informed Dolak that Dunn said he was a felon, and Dolak's search of the gun's serial number revealed that it had been stolen. Dunn was arrested and charged under state law with possession of a handgun by a convicted felon, receiving stolen

property, excessive windshield/window tint, and operating on a suspended or revoked license. He was separately indicted by a federal grand jury on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

**B.**

Dunn filed a motion to suppress the gun and his statements to Dolak and Emerich, arguing that Dolak lacked reasonable suspicion of drug crimes and therefore unconstitutionally extended the traffic stop. The district court referred the motion to a magistrate judge, who held an evidentiary hearing. At the hearing, Dolak testified that when he returned to Dunn's car after running his license through the NCIC database, his purpose was "to follow up on the narcotics standpoint of it and ask him if there was any more narcotics in the vehicle." R.28, PID 82. He explained that the plastic in Dunn's lap appeared to him to be "a torn-off end of a bagg[ie]" typically "found to contain narcotics," and described the Styrofoam cup in the center console as containing "a dark pinkish color liquid, which is often found to be codeine." *Id.*, PID 81. On cross-examination, he again described the liquid as "darker, but it had like a pinkish tint to it." *Id.*, PID 90.

The magistrate judge further questioned Dolak about the difference between his description of the liquid in the investigative report and his testimony at the hearing:

> THE COURT: All right. Detective, just one or two questions. You just said a moment ago you have not looked at Officer or Sergeant Emerich's body cam video, but I can't remember what you said about your own. Have you reviewed it in preparation for the hearing?
>
> A. Yes, Your Honor. I reviewed mine.
>
> Q. So do you -- I've read what you said in the investigative report and the citation, et cetera, but do you still believe that substance in the white Styrofoam cup to -- to be pink or pinkish after having reviewed your body cam video?
>
> A. After reviewing the video, it's darker than what I had initially thought, but it's common to mix it, which would give it a darker appearance.

> THE COURT: All right. When you say common, I assume this is based on your experience as a police officer?
>
> A. Yes, sir.
>
> THE COURT: All right. What -- what, typically, or commonly have you seen it mixed with?
>
> A. Different types of soda.

*Id.*, PID 95.

Following the hearing, the magistrate judge submitted a Report and Recommendation that Dunn's motion be granted. The magistrate judge concluded that Dolak had completed his investigation into traffic violations when he continued to question Dunn about the baggie and lacked reasonable suspicion to expand the stop into an investigation of potential drug crimes. The only facts supporting reasonable suspicion, the magistrate judge found, "were [Dolak's] observation of a torn baggie that he testified in his training and experience was of the type of baggie that commonly contains narcotics and his observation of a substance he believed to be codeine." R.32, PID 132. The magistrate judge found Dolak's testimony regarding the suspected codeine "less than credible," given his different descriptions, and otherwise discounted it:

> Though he initially identified the substance as a pink liquid, when faced with the body camera footage that showed the substance was closer to black in color, he indicated that it was darker than he recalled and rationalized the change in color by saying that codeine is often mixed with other liquids that make it appear darker in color. Given the appearance of the liquid on the body camera footage, which almost looked more like the cup containing it had been used as an ashtray; the fact that Officer Dolak asked no questions regarding the suspected codeine; and the fact that the liquid spilled during the subsequent traffic stop without intervention by Officers Dolak or Emerich, the undersigned does not find that the suspected codeine was a particularly strong indicator of criminal activity if it was any indicator at all.

*Id.* The magistrate judge further recommended Dunn's statements "be excluded as the fruit of the poisonous tree." R.32, PID 134-35.[2]

The government filed an objection to the Report and Recommendation, arguing that Dolak did not extend the stop by asking about the contents of the baggie, the question was based on "reasonable and articulable" suspicion, Dolak had Dunn's consent to search the car, no *Miranda* violation occurred, and a finding that Dolak was not credible was unwarranted. The district court held its own evidentiary hearing to address these objections, and Dolak again testified. Regarding the baggie, he testified: "So, typically, on the street, drugs are packaged in plastic baggies, and the way it's packaged is the drugs are put in the bag, and then it's twisted, and it's tied in a knot. And what was in his lap appeared to be a knotted baggie." R.38, PID 172. He then described the liquid in the Styrofoam cup:

> I initially thought it was a pink -- like a pinker-type substance -- substance. After watching the body camera video, it's a darker substance, but it's still -- it appeared to be like a -- like a syrupy-type substance . . . . It's a darker -- darker color, which can -- is also common, when people use codeine, they mix it with different colors and different types of sodas.

*Id.*, PID 173. He testified that his opinion that the liquid appeared to be codeine had not changed: "At the time, and I still believe it was a syrupy substance, and the soda bottle was there." *Id.*, PID 174.

The district court sustained the government's objection and largely denied Dunn's motion to suppress. It concluded that the torn baggie and suspected codeine provided reasonable suspicion to extend the stop, Dunn's statement that he had a gun was validly elicited, and Dolak's search of the car was permissible. But it excluded Dunn's statement to Emerich that he was a felon, holding

---

[2] In his motion to suppress, Dunn noted that his statements came before he received *Miranda* warnings but did not fully argue that a *Miranda* violation occurred. He did so in his post-hearing brief, but the magistrate judge did not reach this argument.

that Emerich's questioning constituted a *Miranda* violation. The government does not contest the suppression of that statement.

Dunn entered a conditional guilty plea and reserved the right to appeal the district court's suppression ruling. The district court sentenced him to three years' probation, including eighteen months of home detention with certain exceptions. He now appeals.

## II.

"When reviewing the district court's ruling on a motion to suppress, we review findings of fact for clear error and legal conclusions de novo." *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012). "A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Shank*, 543 F.3d 309, 312 (6th Cir. 2008) (quoting *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2008)). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003).

## III.

Dunn raises three arguments on appeal: (1) Dolak unconstitutionally extended the stop because he lacked reasonable suspicion of drug crimes; (2) the question that prompted him to reveal he had a gun constituted a custodial interrogation requiring *Miranda* warnings; and (3) Dolak lacked valid consent to search the car for the gun.

## A.

Dunn argues that Dolak unconstitutionally extended the stop by continuing to question him about the purported baggie after completing the license check and any investigation into potential traffic crimes. Police officers may constitutionally stop a vehicle at least when they "have probable

6

cause to make a stop for a civil infraction" or "reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns . . . . Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted). These tasks typically include deciding whether to issue a ticket, "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355.

However, "the police may extend a stop beyond the scope of what was originally permissible if 'something happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot.'" *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005)). Although reasonable suspicion is less demanding than probable cause, it requires "more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016) (quoting *Shank*, 543 F.3d at 313). The government argues that the torn plastic and suspected codeine provided a "particularized and objective basis" to establish reasonable suspicion of drug crimes and permit extending the stop.

As an initial matter, Dunn argued in his response to the government's objections to the Report and Recommendation, and argues here as well, that the government "did not articulate a specific objection" to the magistrate judge's conclusion that Dolak did not have reasonable suspicion to conduct a drug investigation, and should therefore "be precluded from arguing on

appeal that reasonable suspicion existed." Appellant's Br. at 6, 10. The government framed its objection to the Report and Recommendation as challenging "the Magistrate Judge's finding that the traffic stop in this case was of an unreasonable duration, and . . . the Magistrate Judge's characterization of Det. Dolak's testimony regarding the color of the suspected codeine." R.33, PID 136. As part of the first point, the government argued that Dolak's question "there ain't nothing of whatever was in the baggie in this car, is there?" was "based on reasonable and articulable suspicion," *i.e.*, his observation of the torn plastic and suspected codeine. *Id.*, PID 137-38. At the evidentiary hearing, the district court asked the government questions to clarify whether it objected to the magistrate judge's determination that Dolak had no reasonable suspicion to initiate a drug investigation and observed that "a more orthodox way to frame [the] objection would have been to object to [the magistrate judge's] reasonable suspicion finding on the ground that, among other things, he was wrong about the officer's credibility[.]" R.38, PID 165. The district judge then treated the objection as adequately raising the issue and addressed it on the merits. We agree that although its objection could have been framed more clearly, the government did object to the magistrate judge's conclusion on reasonable suspicion.

Dunn next argues that the district court erred in concluding that the torn plastic in Dunn's lap and suspected codeine in the center console provided the reasonable suspicion necessary to permissibly extend the stop.[3] The district court held that the baggie justified extending the stop because "[d]rug paraphernalia can support an officer's reasonable suspicion and justify questioning about drugs." R.41, PID 212. Dunn argues that Dolak merely saw a short length of knotted plastic and had no basis to conclude it came from a baggie.

---

[3] We note that approximately two-and-a-half minutes elapsed between Dolak pulling Dunn over and asking the second question about the baggie after running his driver's license.

Given his training and experience and Dunn's conduct during the stop, Dolak's belief that the knotted plastic came from a baggie was reasonable. *See United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002) (Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them."). Dolak testified in both hearings that, based on his training in the identification of narcotics and his experience as a police officer, the plastic appeared to be the knotted end of a plastic baggie commonly used to contain illegal drugs, with the "bindle" end torn off. Additionally, shortly after stopping Dunn, Dolak asked: "What's in that baggie in your lap? Did you eat it?" R.19-3, Dolak Body Camera Footage, 01:42-01:50. In response, rather than asking for clarification or denying he had a baggie, Dunn opened his mouth to show it was empty. And when Dolak returned to the car after checking Dunn's license, he asked, "there ain't nothing of whatever was in that baggie in the car, is there?" *Id.*, 03:24-03:26. Dunn responded, "no," again neither denying that there was a baggie nor exhibiting confusion about Dolak's question. *Id.*, 03:26.

According to Dunn, even if Dolak could conclude that the plastic came from a baggie, another speculative leap is required to conclude the baggie constituted drug paraphernalia. "Since there was no other evidence of drug activity," he argues, "Officer Dolak could only guess that the baggie, if there was a baggie, held drugs." Appellant's Br. at 32. The district court determined that "the torn baggie in itself is surely significant, regardless of whether it's sufficient standing alone," R.41, PID 212, and "assuming more is necessary, the presence of a liquid that Dolak perceived to be a mixture of codeine and soda amounts to additional drug evidence that Dunn says is necessary to supply reasonable suspicion," *id.*, PID 213. Items that might be drug paraphernalia can establish reasonable suspicion—when combined with other indicia of criminal activity. *See United States v. Whitley*, 34 F.4th 522, 534 (6th Cir. 2022) ("[P]ossessing a scale is an additional

datapoint weighing in favor of reasonable suspicion if other conduct suggestive of drug activity is observed.").

Dolak testified that there were no additional indications of drug activity other than the suspected codeine—he did not observe Dunn engaging in any behavior before the stop suggesting a drug deal, Dunn did not appear impaired or intoxicated during the stop, and the torn baggie was empty and clean. Dolak's justification for extending the stop therefore depends on whether his belief that the cup contained codeine was reasonable. This question turns on Dolak's credibility.

On this point, Dunn first argues that the district court erred by failing to give "due deference" to the magistrate judge's finding that Dolak's testimony was not credible and "simply substituted its judgment." Appellant's Br. at 25. But the district court was entitled to do so. District courts are required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Although they are afforded "broad discretion to accept, reject, or modify the magistrate's proposed findings," the Supreme Court has indicated that district courts should not substitute their own appraisal of dispositive credibility findings "without seeing and hearing the witness or witnesses whose credibility is in question." *United States v. Raddatz¸* 447 U.S. 667, 680, 681 n.7 (1980). Here, however, the district court conducted its own hearing and saw and heard Dolak testify itself. The magistrate judge was therefore not in a comparatively "better position to assess the credibility" of Dolak's testimony. Appellant's Br. at 26 (quoting *United States v. Monroe*, 2018 WL 2074201, at *4 (W.D. Tenn. May 1, 2018)).

Nor does the district court's finding that Dolak was credible constitute clear error. Dolak provided three descriptions of the substance in the cup. In his investigative report, he described it simply as "pink." In the first evidentiary hearing, he described it as "darkish pink." In the second

10

evidentiary hearing, he described it as darkish pink and "syrupy." Viewing these discrepancies in the light most favorable to the government, Dolak's descriptions are not fatally contradictory, but rather made with increasing detail. Whether this additional detail accurately reflects his observations or was instead a retroactive invention to account for the body-camera footage and overcome the magistrate judge's skepticism is a question of credibility. So too is the question whether the officers' treatment of the baggie and cup undermined Dolak's testimony that he genuinely believed they were drug contraband. Dunn notes that neither item was secured during the stop or taken into evidence for testing; nor was Dunn charged with possession of codeine, a felony under Kentucky law, or possession of drug paraphernalia. The district court found credible Dolak's testimony that he believed the liquid to be codeine based on its color and consistency, "got tunnel vision" after learning Dunn had a gun, and focused on the gun charge because in his experience lower-level narcotics charges are typically dismissed in state court. This finding is entitled to deference. *See United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010) ("This court accords deference to the district court's assessment of credibility inasmuch as the court was in the best position to make such a determination.") (internal quotations omitted); *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) ("Because the [d]istrict [c]ourt was in the best position to judge credibility, and because that [c]ourt plausibly resolved the discrepancies in the testimony, its findings of fact should not be disturbed."); *see also United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) ("'[W]here there are two permissible views of the evidence' the district court's conclusions 'cannot be clearly erroneous.'") (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

Taken together, the torn baggie and suspected codeine were sufficient to establish reasonable suspicion of drug activity. *See United States v. Belakhdhar*, 924 F.3d 925, 928 (6th Cir.

2019) ("Though individual datapoints may portray entirely innocent conduct . . . our cases teach that the overall scatterplot may give rise to reasonable suspicion."). Dolak therefore did not unconstitutionally extend the stop by asking Dunn about the contents of the baggie after he had completed his investigation into possible traffic violations.

**B.**

Second, Dunn argues his statement to Dolak that he had a gun should be suppressed because it was the result of an unlawfully extended stop, *see Wong Sun v. United States*, 371 U.S. 471, 488 (1963), and because it was made before the officers gave him *Miranda* warnings. Because we have determined that the stop was not unlawfully extended, we address only the second argument.

*Miranda* warnings are required when a suspect has "been taken into custody or otherwise been deprived of . . . freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "The . . . noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1980). However, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.* Dunn argues that the traffic stop was "more coercive than usual" because it was "impermissibly prolonged" and "transformed . . . into a drug investigation." Appellant's Br. at 40.

Dolak did not transform the stop into a custodial detention by asking a single follow-up question, supported by reasonable suspicion, about the baggie. "In determining whether a defendant was subject to custodial interrogation we look to the totality of the circumstances to determine how a reasonable [person] in the suspect's position would have understood the

situation." *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003) (internal quotations omitted) (citing *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998)). "The test is an objective one: would a reasonable person in the defendant's position have felt that he was under arrest or was 'otherwise deprived of his freedom of action in any significant way.'" *United States v. Knox*, 839 F.2d 285, 291 (6th Cir. 1988) (quoting *Miranda*, 384 U.S. at 477). A single follow-up question about drug activity, where Dunn has identified no other factor increasing the coercive nature of the traffic stop, did not render the stop custodial. *See Berkemer*, 468 U.S. at 439 (analogizing traffic stops to *Terry* stops, in which "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions"); *id.* at 438 ("The fact that the detained motorist typically is confronted by only one or at most two policeman further mutes his sense of vulnerability."); *United States v. Howard*, 815 F. App'x 69, 79 (6th Cir. 2020) (holding that a traffic stop "in 'public view' on the side of a busy highway" was not custodial) (quoting *Berkemer*, 468 U.S. at 438); *United States v. Wright*, 220 F. App'x 417, 421 (6th Cir. 2007) (holding that fewer than fifteen minutes of questioning did not render a traffic stop custodial).

## C.

Finally, Dunn argues that the district court erred in denying his motion because Dolak lacked valid consent to search his car and retrieve the gun. The district court did not reach the issue of Dunn's consent, concluding instead that Dolak could conduct a limited protective search after Dunn told him that he had a gun. We agree. "[P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, . . . and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *see Boone v. Spurgess*, 385 F.3d 923, 929 (6th Cir.

2004) (holding that officers could lawfully search the interior of defendant's vehicle if they "had lawfully detained [him], and they had grounds for reasonable suspicion that [he] had weapons in his car"). The protective search must be "limited to those areas in which a weapon may be placed or hidden" and "based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Long*, 463 U.S. at 1049 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "Although *Long* does not apply where the suspect is handcuffed and under arrest, it applies where the suspect is not secured and might imminently reenter the car." *United States v. Lurry*, 483 F. App'x 252, 254 (6th Cir. 2012) (internal citations omitted). Dunn's only argument that a protective search was not warranted is that Dolak discovered he had a gun during an unlawful detention, a premise we have rejected. The search was therefore permissible, and the district court did not err by denying Dunn's motion as to the gun.

**IV.**

For these reasons, we **AFFIRM**.