NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0243n.06

Case Nos. 18-5569/5763

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | May 07, 2019 |
| | | DEBORAH S. HUNT, Clerk |

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| TIMOTHY LAMBERT, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

Before: MERRITT, MOORE, and WHITE, Circuit Judges.

**MERRITT, Circuit Judge.** This is an appeal from the denial of a motion to suppress a firearm found during a *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), protective search of defendant's vehicle incident to a *Terry* stop. For the following reasons, we affirm the judgment of the district court.

**I.**

On November 19, 2012, officer Edward McMullen with the Jackson, Tennessee, Police Department received a dispatch call regarding a man with a gun in his waistband at a medical clinic in the Hamilton Hills shopping mall. As McMullen was driving to the scene, he was told the suspect was leaving the premises and McMullen was given a description of the suspect's vehicle and license plate number. As the officer approached the shopping mall, he observed a car leaving

the parking lot matching the description he had been given. He followed the vehicle and after confirming that the license plate matched the one he had been given, he pulled the car over by activating his lights.

After pulling the vehicle over, McMullen had the driver, defendant Timothy Lambert, exit the car. The driver's side door remained open while McMullen and defendant stood beside the car. McMullen explained to defendant that he pulled him over because a disturbance had been reported and the car was stopped because it matched the description McMullen had been given. When asked, defendant stated he did not have a gun. McMullen then patted down defendant looking for weapons.

Officer Ellen Williams also responded to the dispatch call and she was at the scene with McMullen when he pulled over defendant's car. While McMullen was talking to defendant outside the driver's side of the vehicle, she looked in the passenger side window. She observed a toddler restrained in a car seat in the back seat. She opened the passenger side door to make sure the child was safe and then began to search the passenger compartment of the vehicle for weapons from the passenger side. She then went around to the driver's side of the car to continue her search. She first searched between the driver's seat and the console and found a 9mm pistol. Hr'g Tr. at 21-23.

Defendant was later arrested and charged with being a felon in possession of a handgun in violation of 18 U.S.C. § 922(g). Defendant filed a motion to suppress the firearm, and the district court held a hearing. At the conclusion of the hearing, the district court denied the motion in an oral ruling. It found that Officer Williams had performed a legal protective search of the area within reach of the driver, and, under the circumstances, no warrant was required for the limited search. Hr'g Tr. at 37-38.

Defendant pled guilty and was sentenced to 151 months in prison. Defendant filed an untimely notice of appeal that we dismissed on motion of the government. *United States v. Lambert*, No. 14-6462 (6th Cir. Mar. 10, 2015). Defendant then filed an action under 28 U.S.C. § 2255 claiming ineffective assistance of counsel, for, among other errors, failing to file a timely notice of appeal. The district court granted relief on the untimely-notice-of-appeal issue. On July 11, 2018, the district court entered an amended judgment in the original case and reimposed the same 151-month sentence. This timely appeal concerning only the denial of the motion to suppress followed.

**II.**

Defendant raises two issues on appeal claiming Fourth Amendment violations concerning the stop and subsequent search of the car. He first claims, for the first time on appeal, that the police lacked reasonable suspicion to stop his car. He also claims that the search of the interior of his car was improper. We reject both arguments.

**A. *Terry* Stop**

We begin "with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). An exception to this requirement was set forth in *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968), for limited investigatory seizures. "[A] policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.'" *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (footnote omitted) (quoting

*United States v. Brignoni–Ponce*, 422 U.S. 873, 881 (1975)). To establish that a seizure not supported by probable cause was "reasonable," the law enforcement officer must have a reasonable, articulable suspicion that crime is afoot. *Terry*, 392 U.S. at 21–22. The primary issue as to the initial stop is whether it was justified at its inception under the less stringent "reasonable suspicion" standard. *See United States v. Bradshaw*, 102 F.3d 204, 211 n.13 (6th Cir. 1996). "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry*, 392 U.S. at 19). Determining reasonableness "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id*. at 109 (quoting *Brignoni-Ponce*, 422 U.S. at 878).

For the first time on appeal, defendant claims that the *Terry* stop of his vehicle was illegal. The government argues that this issue is waived or that, alternatively, any review must be for plain error. Gov't Br. at 13. Defendant disagrees and argues that by necessity his articulated challenge to the vehicle search "sufficiently preserved" any challenge to the initial stop. Reply Br. at 1-2. Without deciding the waiver issue, we hold that the stop of the car was legal regardless of our standard of review.

Defendant contends that McMullen indicated that he stopped defendant's vehicle for "a traffic stop" but there was no factual basis for a traffic stop because he had not committed a traffic violation. Defendant misconstrues the officer's meaning of "traffic stop" in this instance. "In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction [for example, a traffic violation] or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). Officer McMullen stopped defendant's car because he

had "reasonable suspicion of criminal activity." McMullen testified at the hearing that he had received reliable information that an armed person had recently been involved in a public disturbance. He proceeded immediately to the identified location and saw a car matching the description exiting the parking lot. Before stopping the car, McMullen confirmed that the vehicle description and the license plate number matched the description he had been given by police dispatch. Hr'g Tr. at 7-11.

Defendant also argues that carrying a gun is not a crime in Tennessee and cannot be the basis for a stop based on reasonable suspicion of a crime. But defendant ignores the fact that the report police received indicated that there was some sort of "disturbance" at the shopping mall, and that the suspect, while not brandishing the gun, displayed the gun in his waistband. Even if the firearm was lawfully possessed by defendant, which was not the case here, the permit holder may be arrested for engaging in criminal activity while carrying the firearm. *See* Tenn. Code Ann. § 39-17-1307; Office of the Attorney General, Opinion No. 05-154, 2005 WL 2755418, at *1. The circumstances here gave the officer reasonable suspicion that criminal activity might be afoot, and that the defendant would still have the gun in or near him in the vehicle. The traffic stop of the defendant's vehicle did not violate the Fourth Amendment.

**B. <u>Search of the Vehicle Interior</u>**

The remaining issue is whether the police violated the Fourth Amendment when they searched between the front seat and the center console of defendant's vehicle during the stop and found the firearm that is the subject of the suppression motion. The Supreme Court has held that a vehicle search incident to an occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle is improper. *Gant*, 556 U.S. at 335 (citing *New York v. Belton*, 453 U.S. 454 (1981)). Defendant in this case argues that he falls within the *Gant* rule because he

was equivalent to the arrestee in *Gant* based on the fact that he was standing several feet outside the car and did not have access to the car's interior where he might access a weapon to use against the police.

The government argues that the search was constitutionally reasonable under *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). In *Long*, the Supreme Court extended the scope of a *Terry* search to include a protective search of the vehicle where circumstances warranted:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21) (footnote omitted). Furthermore, the search of the automobile is valid even if the suspect is effectively under the officer's control, as the suspect may "break away from police control and retrieve a weapon from his automobile." *Id.* at 1051. In addition, if "not placed under arrest, [the suspect] . . . will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* at 1052. The Court stressed that such an extension is necessary, even if the defendant appears to be under control of the police, because in *Terry* stops "the officer remains particularly vulnerable in part because a full custodial arrest has not been effected." *Id.* Therefore, "the concern for officer safety extends not only to a suspect himself but to 'the area surrounding a suspect' where he might 'gain immediate control of weapons.'" *United States v. Walker*, 615 F.3d 728, 732 (6th Cir. 2010) (quoting *Long*, 463 U.S. at 1049); *see also United States v. Ware*, 465 F. App'x 487, 494-95 (6th Cir. 2012). Whether reasonable suspicion of danger existed—the dispositive question in this case—is determined from examination of the individual factors under the totality of the circumstances. *See, e.g., United*

*States v. Shank*, 543 F.3d 309, 314 (6th Cir. 2008); *United States v. Graham*, 483 F.3d 431, 438 (6th Cir. 2007).

The district court expressly found that defendant was standing by the open driver's door and "would have had the opportunity, if he attempted to[,] or tried to[, he] could have gone . . . back into the vehicle." Hr'g Tr. at 36. The district court therefore correctly found that the car search falls squarely within *Michigan v. Long*. As recognized by the district court, defendant's access to the location of the weapon during and after the search justified a protective search.

Defendant argues that, under *Gant*, the police could not perform a search of the vehicle because defendant was secured outside the vehicle. "*Gant*, however, dealt with a search incident to arrest and prohibited a search where there was no 'possibility of access' by the suspect." *Walker*, 615 F.3d at 734 (citations omitted). *Gant* does not apply to cases like this one where the suspect has not yet been arrested:

> It must be borne in mind that we are speaking here only of a rule automatically permitting a search when the driver or an occupant is arrested . . . . In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed.

*Gant*, 556 U.S. at 352 (Scalia, J., concurring); *accord United States v. Lurry*, 483 F. App'x 252, 255 (6th Cir. 2012). In short, because this was a *Terry* stop, defendant would have been allowed to return to the vehicle when the brief investigation concluded. At that point, unlike the arrestee in *Gant*, defendant would regain control of the vehicle and any weapons reasonably believed to be therein. In addition to the factual distinctions between the arrestee in *Gant* and defendant, defendant's reliance on *Gant* is also misplaced because *Gant* specifically recognized the continuing validity of *Michigan v. Long* as an established exception to the Fourth Amendment warrant requirement. *Gant*, 556 U.S. at 346-47.

The validity of the search is not, as defendant argues, dependent on whether defendant possessed the gun lawfully (he did not) or the exact nature of the disturbance at the shopping mall prior to the stop. In *Long*, the defendant argued that the search was unconstitutional because it was based on the discovery of a hunting knife that defendant possessed lawfully. *Long*, 463 U.S. at 1052 n.16. The Supreme Court rejected this argument because protective searches are not premised on whether a weapon is legally or illegally possessed. *Id*. This inquiry instead focuses on officer and public safety. *Id*. If the officers deem a weapon to pose a threat to themselves or the public, it does not matter whether the weapon is possessed legally. *Id*. The legality of defendant's possession of the gun or the exact nature of the earlier "disturbance" is therefore irrelevant.

Given that the officers had reasonable suspicion to believe based on the dispatch report that defendant was armed and had been recently involved in a disturbance at a nearby shopping mall, the stop of the vehicle and the protective search of the car incident to that stop were reasonable and legal. We affirm the judgment of the district court.